# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

DEAN W. T.,                               )
                                          )
    Plaintiff,                        )
                                          )
       v.                           )     Case No. 4:24-cv-04113-SLD-RLH
                                          )
FRANK J. BISIGNANO,[1] Commissioner       )
of Social Security,                       )
                                          )
    Defendant.                        )

## REPORT AND RECOMMENDATION

Dean W. T. ("Claimant" or "Plaintiff") seeks review of the final decision of Respondent Frank J. Bisignano, Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). Before the Court are Plaintiff's Brief (doc. 8), Commissioner's Brief (doc. 12), and Plaintiff's Reply Brief (doc. 13).[2] This matter has been referred for a report and recommendation. (Text Order dated April 25, 2025). For the following reasons, the Court recommends that Claimant's request to reverse and remand the unfavorable decision of the Commissioner be denied.

---

[1] Frank J. Bisignano was appointed as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for his predecessor as the named defendant in this case.

[2] Citations to documents filed in this case are styled as "(Doc. # at __ )." Citations to the pages within the Administrative Record will be identified by "(R. at __ )." The Administrative Record appears at (doc. 6) on the docket.

BACKGROUND

## I.    Procedural History

This case has been pending for nearly a decade, involving multiple hearings before different administrative law judges ("ALJ") and over a half dozen remands from the Social Security Administration's Appeals Council and this Court. (R. at 4766–68); Order, *Dean W.T. v. Kijakazi*, 4:22-cv-04174-SLD-JEH, ECF No. 14.

Claimant Dean W. T. filed a Title II application for a period of disability and DIB on August 11, 2016, with an alleged onset date of February 3, 2015. (R. at 4766). His claim was denied initially on April 6, 2017, and again upon reconsideration on June 7, 2017. (R. at 4766). After he requested a hearing, ALJ Stacey L. Foster conducted video hearings on December 20, 2017, and June 19, 2018, during which an impartial vocational expert ("VE") testified. (R. at 4766). The ALJ subsequently issued an unfavorable decision on July 23, 2018. (R. at 4766). Claimant appealed, and the Appeals Council remanded on October 18, 2018, directing consideration of new evidence concerning migraine headaches and whether the condition medically equaled Listing 11.02(B) or 11.02(D). (R. at 4766).

On August 12, 2019, ALJ David Thompson held a video hearing at which neurologist Steven Goldstein, M.D., testified as a medical expert ("ME") and Heather Mueller testified as a VE, followed by VE interrogatories answered September 19, 2019, and an unfavorable decision on December 2, 2019. (R. at 4766–67). The Appeals Council again remanded on February 24, 2020, finding that the residual functional capacity ("RFC") "did not adequately account for [ ] moderate limitations in understanding, remembering[,] or applying information and [in] concentrating,

2

persisting, or maintaining pace," that the state-agency mental assessments were not adequately addressed, and that the step-four finding appeared inconsistent with the mental RFC. (R. at 4767).

Due to the COVID-19 pandemic, ALJ Thompson conducted a telephone hearing on July 21, 2020, and issued another unfavorable decision on August 21, 2020, which the Appeals Council remanded on January 25, 2021, "because the decision did not address state agency [medical] evaluations[,] did not adequately evaluate consultative examiner[] Dr. Cheah[,] and did not sufficiently consider" migraines. (R. at 4767). "Because the case had already been remanded to the same ALJ," the Appeals Council ordered reassignment on remand. (R. at 4767).

On May 26, 2021, ALJ Robert Schwartz held a telephone hearing and "issued a partially favorable decision" on June 30, 2021, finding Claimant disabled as of February 12, 2021. (R. at 4767). Claimant again appealed the decision, and the Appeals Council remanded on October 4, 2021, affirming disability as of February 12, 2021, but returning the matter for the closed period from February 3, 2015, through February 11, 2021, because the "decision did not properly evaluate opinions from treating sources Dr. Johnson and [treating nurse practitioner] Sullivan." (R. at 4767–68). ALJ Schwartz conducted another telephone hearing on February 2, 2022, then issued an unfavorable decision on February 28, 2022, which the Appeals Council remanded on April 22, 2022, for inadequate evaluation of the Department of Veterans Affairs ("VA") opinion evidence and occupational therapist ("OT") Laurie Jones's opinion, and directed reassignment because of prior remands. (R. at 4768).

3

On August 10, 2022, ALJ John M. Wood held a telephone hearing and issued an unfavorable decision on August 23, 2022; the Appeals Council denied review on October 20, 2022, and this Court later remanded on July 6, 2023, on the parties' joint motion. (R. at 4768); Order, *Dean W.T. v. Kijakazi*, 4:22-cv-04174-SLD-JEH, ECF No. 14. Consistent with the Court's order, the Appeals Council issued a September 8, 2023, remand instructing ALJ Wood to reevaluate opinions from Drs. Thirkannad, Cheah, and Goldstein, to obtain supplemental VE evidence "if warranted," and to otherwise proceed through the sequential evaluation. (R. at 4768–69).

On January 10, 2024, ALJ Wood held the most recent hearing, at which Claimant appeared by telephone with a representative and impartial VE Kimberly Eisenhuth testified. (R. at 4769).

Before the hearing, the agency submitted interrogatories to psychologist Michael A. Lace, Psy.D., on October 5, 2023 (response October 12–13, 2023), and to physician Ken Berger, M.D., on October 3, 2023 (response October 5, 2023, with a supplemental request January 17, 2024, and supplemental response January 20–31, 2024); Claimant's representatives later objected in a letter dated February 2, 2024, to these exhibits and sought to pose their own interrogatories, but the ALJ deemed the objections waived—noting the timing, opportunities to object, and that the experts were not provided audio recordings of the hearings. (R. at 4769).

On March 6, 2024, ALJ Wood denied Claimant's application for a period of disability and claim for DIB. (R. at 4814). Claimant "opted to proceed directly to

federal district court and this civil action for judicial review under 42 U.S.C. § 405(g)."

(Doc. 8 at 3) (citation omitted).

## II.    The ALJ's 2024 Decision

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity between February 3, 2015, and February 11, 2021, explaining that military and VA payments reflected benefits rather than compensable work activity and that his negligible 2019 earnings did not qualify as substantial gainful activity. (R. at 4772).

At step two, the ALJ found that Claimant had severe impairments as defined by 20 C.F.R. § 404.1520(c). (R. at 4773). Specifically, Claimant suffered from cervical spine degenerative disc disease; a history of bilateral wrist scapholunate ligament tears with osteoarthritis, status-post left wrist surgeries; arthritis of the right thumb; migraines; right knee degenerative joint disease; sleep apnea; anxiety disorder; affective disorder; post-traumatic stress disorder; and a history of traumatic brain injury with cognitive deficits. (R. at 4772). The ALJ did not identify any non-severe medically determinable impairments.

While Claimant's severe impairments were acknowledged, at step three, the ALJ determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. at 4773). Specifically, the ALJ considered Listings 1.15 and 1.18 (musculoskeletal disorders) and found that the required "D" criteria were

5

not satisfied because the record did not document assistive-device needs or an inability to use one or both upper extremities to initiate, sustain, and complete work-related fine and gross movements. (R. at 4773). The ALJ next evaluated traumatic brain injury under Listing 11.18 and found that neither the extreme physical-function limitation of paragraph A nor the combination of marked limitations required by paragraph B was established. (R. at 4773–74).

Because there is no specific listing for migraines, the ALJ applied SSR 19-4p and considered medical equivalence to Listing 11.02 (epilepsy, "paragraphs B or D for dyscognitive seizures"). (R. at 4774). The ALJ, however, concluded that the evidence did not establish the frequency, adherence to treatment, or marked functional limitations required under paragraphs B or D, notwithstanding Claimant's reports of frequent headaches. (R. at 4773–76). In the migraine discussion, the ALJ noted Dr. Goldstein's 2019 testimony that objective findings did not corroborate migraine episodes of disabling severity and cited Dr. Berger's 2023 interrogatory opinion that no listing, including Listing 11.02, was met or equaled. (R. at 4775–76). Consistent with Dr. Goldstein's 2019 testimony, the ALJ "also could not find objective evidence that the claimant's migraines are typically as debilitating/functionally limiting as the claimant alleges." (R. at 4776).

Next, the ALJ evaluated Claimant's mental impairments under Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (R. at 4777–78). The ALJ found the following paragraph-B

limitations: moderate in understanding, remembering, or applying information; mild in interacting with others; moderate in concentrating, persisting, or maintaining pace; and moderate in adapting or managing oneself. (R. at 4776–79).

In concluding that Claimant had a moderate limitation in concentrating, persisting, or maintaining pace ("CPP"), the ALJ noted that in disability function reports and in testimony at multiple hearings, Claimant consistently described problems with CPP stemming from both physical and mental impairments. (R. at 4778) (citing R. at 1102–09, 1124–32). A March 2017 consultative psychological evaluation by E-Ling Cheah, Psy.D., documented that Claimant's "general cognitive ability . . . was in the borderline range" and that he demonstrated "moderate impairment in his ability to sustain concentration." (R. at 4779). In contrast, treating neurologist Dr. Michael Johnson reported at visits in August 2017 and January 2019 that although "mental status was not the focus" of those appointments, Claimant's attention, language, and memory appeared adequate over the course of 60- and 45-minute visits, respectively. (R. at 4779). Similarly, a September 2019 neurology examination noted a normal attention span, and subsequent visits in late 2019 and 2020 did not reveal significant concentration or persistence deficits. (R. at 4779). Based on this record, the ALJ found that Claimant's concentration, persistence, and pace limitations were overall moderate in severity. (R. at 4778–79).

Finally, the ALJ found that the paragraph-C criteria were not satisfied. (R. at 4779). Although the regulations require evidence of a severe and persistent disorder with ongoing treatment and marginal adjustment, the record showed that Claimant

adequately adapted to changes in the environment and daily demands during the relevant period. (R. at 4779). Accordingly, no mental-health listing was met or equaled. (R. at 4779).

Before step four,[3] the ALJ determined that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with multiple additional restrictions. (R. at 4779–80). In particular, the ALJ found that Claimant could:

> never climb ladders, ropes or scaffolds. He could climb ramps and/or stairs, balance, and crawl no more than occasionally and he could stoop, kneel, and/or crouch no more than frequently. He could reach, handle and finger no more than frequently. He could not engage in pushing or pulling with the upper extremities but he could frequently operate foot controls. He should have avoided concentrated exposure to humidity, wetness, pulmonary irritants, extreme temperatures, vibrations, and loud or very loud noises (levels 4 and 5 as defined in the SCO) and should have engaged in only occasional operation of a motor vehicle. He should have avoided environmental hazards such as unprotected heights and dangerous machinery. He could understand, remember and carry out simple instructions and make simple work-related decisions, and he could tolerate occasional changes to a routine work setting.

(R. at 4779–80). In making his RFC determination, the ALJ also considered all symptoms under 20 C.F.R. § 404.1529 and SSR 16-3p and weighed opinion evidence under 20 C.F.R. § 404.1527. (R. at 4780). While acknowledging that Claimant's "impairments could reasonably be expected to cause his alleged symptoms," the ALJ found that his "statements concerning the intensity, persistence, and limiting effects

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1520(e). "In making this finding, the [ALJ] must consider all of the claimant's impairments, including impairments that are not severe." (R. at 16) (citations omitted). "The [residual functional capacity] is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

8

of th[o]se symptoms [were] not" fully consistent with the medical and other evidence of record. (R. at 4786).

In formulating the RFC, the ALJ devoted significant discussion to medical opinion evidence. (R. at 4790–809).

The ALJ considered the opinions of Dr. Johnson, Claimant's treating neurologist, and nurse practitioner ("NP") Sullivan. (R. at 4800–03). The ALJ acknowledged that both were treating sources, cited dates, and questionnaire responses, but discounted their opinions as largely reciting Claimant's subjective allegations rather than resting on objective medical evidence. (R. at 4801–03). The ALJ emphasized that, notwithstanding Claimant's reports of disabling migraines, treatment records showed that he was able to travel to appointments, engage in conversation, sit, walk, and participate in examinations—i.e., "he was engaging in some of the basic activities that might be involved in a work setting," and "was able to concentrate, mentally focus and recall despite [ ] acute migraine[s]"—thus contrary to the treating sources' assessed limitations. (R. at 4802–03). On this basis, the ALJ assigned "little weight" to Dr. Johnson and NP Sullivan's opinions regarding the frequency, severity, and functional impact of migraines, finding "no compelling evidence" in the record to sustain the level of limitation alleged. (R. at 4800–03, 4807).

The ALJ next addressed the opinion of occupational therapist Jones, who restricted Claimant to lifting no more than five pounds. (R. at 4798). The ALJ assigned no weight to this opinion, reasoning that it merely mirrored Claimant's self-reported symptoms, was unsubstantiated by any objective medical findings, and

9

conflicted with the contemporaneous opinion of orthopedic surgeon Dr. Thirkannad. (R. at 4797–98). The ALJ gave Dr. Thirkannad's opinions "some weight," recognizing him as a treating surgeon who performed Claimant's two wrist surgeries and was well-positioned to assess functional use of the upper extremities.[4] (R. at 4798). The ALJ did not accord controlling weight to Dr. Thirkannad, however, because his opinions lacked manipulative limitations. (R. at 4798). Instead, the ALJ credited portions of ME Dr. Ken Berger's interrogatory responses, which supported manipulative restrictions and restrictions on pushing and pulling. (R. at 4789).

The ALJ also addressed evidence from the Department of Veterans Affairs ("VA"), which had rated Claimant 100 percent disabled due to service-connected conditions. (R. at 4799). The ALJ explained that VA disability determinations are not binding under 20 C.F.R. § 404.1527(d),[5] are "irrelevant" to the Social Security disability analysis and, therefore, "not entitled to any weight." (R. at 4799). However, the ALJ explained that the medical evidence underlying the VA's decisions was considered in formulating the RFC. (R. at 4799).

---

[4] Claimant was injured in a softball collision on August 3, 2014, resulting in bilateral wrist ligament tears with mild osteoarthritis, which rendered him unfit for military duty and limited to restricted civilian duty with his right arm. (R. at 4786). Following this injury, he entered the Army's Wounded Warrior Program and received counseling and therapy for both traumatic brain injury and post-traumatic stress disorder ("PTSD") arising from the softball collision. (R. at 4780–81). Records from Warrior Transition Units at Fort Knox and Fort Campbell reflect ongoing psychological treatment, which the Department of Veterans Affairs later recognized as service-connected disabilities. (R. at 4780–81, 4799).

[5] The ALJ explained that 20 C.F.R. § 404.1527(d)—which applies only to claims filed before March 27, 2017—outlines that "opinions that a person is disabled are not considered medical opinions, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." (R. at 4799).

10

At step four the ALJ found Claimant could not perform his past relevant work. (R. at 4810). At step five, relying on vocational expert Eisenhuth's testimony, the ALJ concluded that Claimant could perform jobs existing in significant numbers in the national economy. (R. at 4811–13). Specifically, the ALJ identified the representative occupations of marker, routing clerk, and mail clerk. (R. at 4811–13). Based on this finding, the ALJ determined that Claimant was not disabled under the Act from February 3, 2015, through February 11, 2021. (R. at 4770, 4814).

Claimant elected to proceed directly to federal court, thereby waiving review by the Appeals Council. (Doc. 8 at 3). Accordingly, the ALJ's February 28, 2024, decision constitutes the Commissioner's final decision under 42 U.S.C. § 405(g) and is, therefore, reviewable by this Court. *See Sims v. Apfel*, 530 U.S. 103, 112 (2000) (plurality opinion).

## LEGAL STANDARD

### I.    ALJ Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

11

First, the claimant must be disabled, as defined under 42 U.S.C. § 423(d)(1)(a). Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). Prescribed by regulation, the factual determination is made by applying a sequential five-step inquiry. This sequential process requires the ALJ to examine, in order: (1) Whether the claimant is currently engaged in substantial gainful employment; (2) Whether the claimant has a severe impairment; (3) Whether the impairment meets or medically equals the criteria of a listed impairment enumerated in the regulations; (4) Whether the claimant can perform any past relevant work; and (5) Whether the claimant is unable to adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at steps three or five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). A negative answer at any step—other than step three—precludes a finding of disability. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The burden of proof is on the claimant at steps one through four; however, the burden then shifts to the Commissioner at step five to show the claimant's ability to engage in substantial gainful employment. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims*, 530 U.S. at 112.

12

## II.    Judicial Review

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The Seventh Circuit emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). All that is required is that ALJs "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to

assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). When reviewing for substantial evidence, courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Claimant seeks reversal and a direct award of benefits, asserting that the ALJ erred by (1) failing to include or explain the omission of credible limitations in concentrating, persisting, or maintaining pace in the RFC (docs. 8 at 6–9; 13 at 2–3); (2) failing at step five by relying on an obsolete occupation (marker), misapplying reasoning-level requirements for mail clerk, and omitting necessary findings on the numerical significance of remaining jobs (docs. 8 at 10–13; 13 at 3–6); and (3) failing to properly evaluate the medical opinion evidence, including the VA disability rating, the opinions of Dr. Walker, Dr. Johnson, and nurse practitioner Sullivan, the need to clarify occupational therapist Jones's opinion, the deference owed to treating sources, and the prohibition against substituting lay judgment for medical expertise (docs. 8 at 13–18; 13 at 6–10). Finally, Claimant argues that the Court should remand for an award of benefits rather than further proceedings. (Docs. 8 at 18–21; 13 at 10–11).

14

In response, the Commissioner contends that the ALJ's decision is reasonable, supported by substantial evidence, and consistent with controlling authority. (Doc. 12). Even if one or more representative occupations were excluded, the Commissioner argues, sufficient jobs would remain in the national economy to satisfy the step-five burden. (Doc. 12 at 2). The Commissioner further contends that the ALJ properly weighed the medical opinions, noting that Dr. Walker herself deemed her evaluation invalid, and that the ALJ provided adequate reasons for discounting the other sources. (Doc. 12 at 2, 10). As to remedy, the Commissioner emphasizes that prior remands are not grounds for an award of benefits. (Doc. 12 at 25). Claimant replies that the Commissioner's justifications amount to impermissible post hoc rationalizations. (Doc. 13 at 7) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

For the following reasons, the Court recommends that the ALJ's decision be affirmed.

## I.    The ALJ Incorporated Credible Mental Limitations in the RFC

Claimant first argues that remand is required because the ALJ found that he had a moderate limitation in concentrating, persisting, or maintaining pace ("CPP") at step three but failed to include corresponding "admitted limitations" in the RFC. (Docs. 8 at 6, 6–9; 13 at 2–3). The RFC, by regulation, reflects "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [his] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). In formulating the RFC, an ALJ must incorporate all functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir.

2015); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Claimant contends the ALJ failed in this regard by excluding or omitting restrictions corresponding to the ALJ's own findings of moderate CPP limitations. (Docs. 8 at 6–9; 13 at 2–3).

At step three, as discussed, the ALJ concluded that Claimant had moderate CPP limitations, noting that in disability function reports and in hearing testimony, Claimant consistently described problems with sustaining CPP due to both physical and mental impairments. (R. at 4778–79, 1102–09, 1124–32). A March 2017 consultative evaluation by Dr. Cheah found Claimant's cognitive ability in the borderline range and documented "moderate impairment in his ability to sustain concentration." (R. at 4779). By contrast, treating neurologist Dr. Johnson observed in August 2017 and January 2019 that Claimant's attention, language, and memory were adequate during 60- and 45-minute visits. (R. at 4779). Likewise, a September 2019 exam noted normal attention span, and later visits in 2019 and 2020 revealed no significant deficits. (R. at 4779). Based on this evidence, the ALJ found that Claimant had a moderate limitation in CPP. (R. at 4778–79).

Consistent with his step-three finding, the ALJ limited Claimant only to "understand, remember and carry out simple instructions and make simple work-related decisions," and to "tolerate occasional changes to a routine work setting." (R. at 4780). Claimant argues that this conclusion failed to account for his moderate CPP limitations or his mild limitations in interacting with others. (Doc. 8 at 6). In support, he cites *Varga*, 794 F.3d at 814–15, and *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019), for the proposition that "simple tasks" restrictions are not a proxy for staying

16

on task. (Docs. 8 at 7; 13 at 2). According to Claimant, a restriction to "simple instructions" addresses only "understanding, remembering, and applying information," not the ability to sustain CPP. (Doc. 8 at 7).

This argument is unavailing. The "B-criteria" ratings at step three are not an RFC assessment; rather, they are used only to rate the severity of impairments at steps two and three.[6] *See* 20 C.F.R. § 404.1520a(d)(3). The RFC is determined in a separate analysis that translates medical evidence into functional restrictions. *See* 20 C.F.R. § 404.1545; (Doc. 12 at 6). Here, the ALJ acknowledged Claimant's moderate CPP limitations but explained why they did not necessitate additional RFC restrictions beyond simple instructions, simple decisions, and occasional changes. (R. at 4778–80, 4807–09). The ALJ cited treatment notes repeatedly documenting adequate attention and concentration during extended medical visits, which he contrasted with earlier test results showing borderline cognition and moderate concentration deficits. (R. at 4778–79, 4807–09).

The ALJ then reasonably relied on the prior administrative medical findings of state-agency psychologists M. Duncan Currey, Ph.D., and Ed Ross, Ph.D. (R. at 4807–08). On April 3, 2017, Dr. Currey opined that while Claimant had "moderate limitations in understanding, remembering or applying information," CPP, and adapting or managing oneself, he retained the ability to "understand and remember simple instructions" and could "maintain attention and concentration for simple

_____

[6] As the ALJ explained, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. at 4779).

17

tasks with customary breaks, with infrequent interruptions from psychologically based symptoms." (R. at 4807–08). Dr. Currey further opined that Claimant could "adapt to infrequent change." (R. at 4807–08). On June 6, 2017, Dr. Ross affirmed Dr. Currey's conclusions. (R. at 4808). As such, the ALJ did not err when he adopted these opinions by restricting Claimant to simple instructions, simple decisions, and occasional changes. (R. at 4780).

Next, no guesswork is required—"moderate" ratings in the B-criteria signify "fair" functioning, and "fair . . . does not mean 'bad' or 'inadequate.' " *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). In *Pavlicek*, the Seventh Circuit held that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* Following that same logic, the ALJ reasonably concluded that Claimant's moderate CPP limitations are adequately addressed by restricting him to simple instructions, simple decisions, and only occasional changes in a routine work setting. (R. at 4780).

Claimant's argument rests on a mischaracterization. It treats step-three findings as binding on the RFC, when the regulations require the ALJ to translate such findings into functional terms. *See Gedatus*, 994 F.3d at 904–06. That is precisely what the ALJ did here: he built a logical bridge from the medical evidence and the consultants' narrative RFC assessments to the practical restrictions included

18

in the RFC. (R. at 4778–80, 4807–09). The Seventh Circuit has repeatedly upheld such reasoning.[7]

Unlike in *Crump* and *Varga*, where ALJs failed to explain how moderate CPP limitations were accommodated and merely equated "simple" work with adequate persistence and pace, the ALJ here explicitly translated Claimant's moderate CPP deficits into functional restrictions, cited supporting treatment evidence, and adopted state-agency opinions that directly addressed concentration and pace. That explanation satisfies the ALJ's obligation to "build an accurate and logical bridge" between the evidence and the RFC. *See Gedatus*, 994 F.3d at 904–06. Accordingly, the Court finds that the ALJ reasonably accounted for Claimant's moderate CPP limitations, and substantial evidence supports the RFC determination.

## II.    The ALJ Did Not Commit Legal Error at Step Five

At step five, the burden shifts to the Commissioner to demonstrate that—given a claimant's RFC, age, education, and work experience—other jobs exist in significant numbers in the national economy that a claimant can perform. 20 C.F.R. § 404.1560(c)(2); *Wilder*, 22 F.4th at 651. Relying on the testimony of VE Eisenhuth, the ALJ found that an individual with Claimant's limitations could perform the representative unskilled, light occupations of marker (136,000 jobs nationally, DOT

---

[7] *See, e.g.*, *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (upholding RFC limited to simple, routine, repetitive tasks where claimant's concentration difficulties arose only in social situations, which the ALJ accounted for); *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019); *Burmester v. Berryhill*, 920 F.3d 507, 511–12 (7th Cir. 2019) (upholding RFC to "simple, routine, repetitive tasks with limited interactions" where the ALJ relied on state-agency opinions translating mental-limitation findings into functional terms); *Gedatus*, 994 F.3d at 904–06. By contrast, remand has been required where the ALJ found moderate CPP limitations but failed to explain their omission from the RFC. *See Crump v. Saul*, 932 F.3d 567, 570–71 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 814–15 (7th Cir. 2015).

# 209.587-034), routing clerk (118,000 jobs nationally, DOT # 222.687-022), and mail clerk (11,000 jobs nationally, DOT # 209.687-026). (R. at 4811–13, 4843–51). The ALJ also explored hypotheticals involving additional restrictions on fast-paced work, noise levels, and exposure to bright lights, and obtained testimony on how those added conditions would affect job incidence. (R. at 4811–12, 4860–64).

Claimant contends that the ALJ nevertheless failed to carry his step-five burden by relying on (1) the marker occupation, which he argues is obsolete; (2) the mail clerk occupation, which requires Reasoning Level 3 despite his RFC limitation of simple instructions; and (3) the routing clerk occupation, without specific findings that it exists in significant numbers. (Docs. 8 at 10–13; 13 at 3–6). The Commissioner responds that the ALJ reasonably concluded Claimant could perform a significant number of jobs in the national economy and that sufficient jobs would remain even if one or more occupations were excluded. (Doc. 12 at 2, 20–23). The Court addresses each in turn.

### A.    *The Marker Occupation*

Claimant argues that the marker occupation is obsolete and, without citing authority from the Seventh Circuit, asks this Court to so rule. (Docs. 8 at 10–11; 13 at 5–6). In support, Claimant points to a hodgepodge of district court decisions that have expressed skepticism about the continued existence of the occupation, including *Henderson v. O'Malley*, No. 21-CV-3304, 2024 WL 127843, at *5, *6 (E.D.N.Y. Jan. 11, 2024) (noting that "the Court declines to address [the marker occupation] *sua sponte*" (quotation omitted)); *Daniel L. v. Kijakazi*, No. 22 C 6976, 2023 WL 5830807, at *9 (N.D. Ill. Sept. 8, 2023) (making an observation about the jobs VE's provide);

*Hawthorne v. Comm'r of Soc. Sec.*, No. 1:20-CV-02247-FB, 2021 WL 4356009, at *2 (E.D.N.Y. Sept. 24, 2021) (listing jobs that "no longer exist as an isolated role," excluding marker); *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5 n.1 (D. Md. Mar. 1, 2018) ("While not a basis for remand . . ."). These cases, however, stop short of declaring the marker position obsolete as a matter of law; at most, they underscore the need for reliable vocational evidence where outdated DOT titles are involved.

Here, the VE's testimony provided precisely that. At the hearing, VE Eisenhuth explained in detail how she identified representative occupations and derived job-incidence estimates. (R. at 4811–13, 4843–51, 4860–64). She mapped the RFC-based hypothetical to specific DOT titles, provided the corresponding codes and national job counts, and confirmed that the representative jobs—including price marker—were consistent with the RFC's exertional, postural, and environmental restrictions. (R. at 4811–13, 4843–51). She further testified that she calculates job numbers by drawing on Bureau of Labor Statistics data, accessed through SkillTRAN/Job Browser Pro, which crosswalks SOC groupings to DOT titles and allocates job counts at the DOT level. (R. at 4860–64). Eisenhuth also demonstrated how she applies reductions when additional limitations would erode the occupational base and quantified those effects across the identified occupations. For example, when asked to assume no fast-paced, hourly quotas, she testified that price marker and mail clerk positions would remain, while routing clerk jobs would be halved to about 59,000. (R. at 4862). When asked to assume noise limits of level two or below,

21

price marker and mail clerk positions would be eliminated, and routing clerk positions would again be reduced by half. (R. at 4861–62). And when asked to assume avoidance of very bright light, she clarified—after follow-up—that only inspection, repair, or outdoor jobs would be excluded, leaving price marker and routing clerk available. (R. at 4860–64). Finally, she addressed counsel's foundational objections,[8] affirming that her job-number opinions rest on recognized labor-market sources. (R. at 4811–13).

In sum, the Commissioner bears the burden at step five to show that jobs exist in significant numbers in the national economy that a claimant can perform. 20 C.F.R. § 404.1560(c)(2); *Wilder*, 22 F.4th at 651. That burden was satisfied here. The VE provided detailed, methodologically sound testimony supported by Bureau of Labor Statistics data and responsive to the RFC. Claimant, by contrast, offered no vocational evidence undermining the VE's conclusions. On this record, the ALJ was entitled to credit the VE's testimony, and the Court finds no basis to declare the marker occupation obsolete or to disregard the ALJ's reliance upon it.

B.    *The Mail Clerk Occupation*

Claimant next contends that the mail clerk occupation is inconsistent with his RFC, which limited him to understanding, remembering, and carrying out only "simple" instructions. (Docs. 8 at 22–23; 13 at 10–12). He argues that because the DOT classifies mail clerk as requiring Reasoning Level 3—defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written,

---

[8] The ALJ expressly considered and rejected objections to the VE's reliance on these sources and conventions. (R. at 4812–13).

oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations"—the position exceeds his RFC under SSR 00-4p, 2000 WL 1898704, and agency policy. (Doc. 8 at 22–23).

This argument is unpersuasive. There is no categorical conflict between a limitation to simple instructions and Reasoning Level 3 occupations. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (upholding reliance on VE testimony that a claimant limited to simple work could perform Reasoning Level 3 jobs). SSR 00-4p requires an ALJ to identify and resolve apparent conflicts between VE testimony and the DOT, but it does not impose a per se bar on Reasoning Level 3 jobs where the RFC restricts a claimant to simple instructions. 2000 WL 1898704. Here, the ALJ expressly asked the VE whether her testimony was consistent with the DOT, and she confirmed that it was, aside from exceptions regarding pushing, pulling, and other motor-function restrictions. (R. at 4851). No unresolved conflict remained, and the VE explained why the mail clerk position was compatible with Claimant's RFC. Because the VE's testimony was consistent with the DOT and supported by a reasonable explanation grounded in the medical record, the ALJ permissibly relied on it.

Nor does Claimant's reliance on the SSA's Program Operations Manual System ("POMS") alter this analysis. (Doc. 8 at 12). The Seventh Circuit has emphasized that POMS "is a policy and procedure manual that employees of the [agency] use in evaluating Social Security claims and does not have the force and effect of law, even if it might sometimes be persuasive." *O'Donnell v. Saul*, 983 F.3d

950, 958 (7th Cir. 2020) (quoting *Davis v. Sec'y of HHS*, 867 F.2d 336, 340 (6th Cir. 1989)). To the extent Claimant invokes POMS or similar guidance to argue that Reasoning Level 3 jobs conflict with a "simple" RFC, such reliance does not change the fact that substantial evidence supports the ALJ's conclusion.

Here, the ALJ explicitly accounted for Claimant's moderate CPP limitations by restricting him to simple instructions, simple work-related decisions, and occasional changes to a routine work setting. (R. at 4780). The VE, when presented with this RFC, identified mail clerk as a representative occupation consistent with those restrictions and flagged no conflict between the DOT and her testimony. (R. at 4811–13, 4843–51). Claimant's counsel cross-examined the VE and raised no unresolved conflicts. (R. at 4855–57, 4860). In fact, when cross-examining the VE, counsel asked: "[DDS] found that this [hypothetical] person would have a marked impairment dealing with detailed tasks. So if we stipulate on the first hypothetical, no detailed or complex tasks, could the jobs cited be performed?" To which the VE answered: "Yes, they could." (R. at 4860). Counsel then moved on without objection.[9] After confirming the VE's testimony was consistent with the DOT, the ALJ adopted it in concluding that Claimant could perform the mail clerk occupation. (R. at 4811).

Accordingly, while Claimant points to out-of-circuit district court decisions suggesting a tension between "simple" RFCs and Reasoning Level 3 jobs, those authorities do not control. Seventh Circuit precedent confirms that such jobs are not

---

[9] The Seventh Circuit has held that a claimant forfeits an appellate challenge to a vocational expert's testimony despite counsel's cross-examination about the expert's methodology. *Fetting v. Kijakazi*, 62 F.4th 332, 337–38 (7th Cir. 2023).

foreclosed, and the ALJ complied with SSR 00-4p by inquiring about and resolving any potential conflicts. On this record, the ALJ reasonably relied on the VE's testimony that Claimant could perform the mail clerk occupation, and the Court finds no error.

### C.    *The Routing Clerk Occupation*

Finally, Claimant contends that even if routing clerk remains a valid occupation, the ALJ erred by failing to make explicit findings that routing clerk jobs alone exist in significant numbers in the national economy. (Docs. 8 at 12–13; 13 at 3–6). The Commissioner responds that this argument is unavailing because either routing clerk or marker—independently—exceeds 100,000 jobs nationally, a figure that comfortably meets the statutory threshold for "significant numbers." (Doc. 12 at 23–24).

At step five, the Commissioner need only establish that work exists in significant numbers in the national economy that the claimant can perform. 20 C.F.R. § 404.1560(c)(2); *see also Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011). As a reviewing court, we must affirm the ALJ's decision if it is adequately supported, regardless of whether "reasonable minds could differ." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The regulations do not fix a bright-line minimum for "significant numbers," but the Seventh Circuit has repeatedly upheld findings supported by far fewer than 100,000 jobs. *See, e.g.*, *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (55,000 jobs significant); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number."); *Lee v. Sullivan*, 988

F.2d 789, 794 (7th Cir. 1993) (1,400 positions is enough); *Nix v. Sullivan*, 744 F. Supp. 855, 863 (N.D. Ill. 1990) (675 positions enough), *aff'd*, 963 F.2d 575 (7th Cir. 1991)).

Here, the ALJ relied on VE Eisenhuth's testimony that routing clerk alone accounts for approximately 118,000 jobs nationally. (R. at 4811, 4845–46). That testimony was uncontroverted and consistent with Bureau of Labor Statistics data incorporated through SkillTRAN methodology. (R. at 4811–13). Even setting aside marker or mail clerk, the routing clerk occupation by itself represents more than a hundred thousand jobs, well above the levels the Seventh Circuit has deemed "significant."

Claimant's argument that the ALJ was required to make a separate, explicit finding that routing clerk jobs alone were sufficient is a red herring. The step-five inquiry asks whether substantial evidence supports the conclusion that "other work" exists in significant numbers, given the RFC and vocational profile. See 20 C.F.R. § 404.1560(c)(2). Where the record establishes that at least one representative occupation independently satisfies that standard, the Commissioner has met his burden. *See Weatherbee*, 649 F.3d at 572. The ALJ was not required to speculate further once the VE testified—without contradiction—that routing clerk jobs numbered over 100,000 nationally.

Accordingly, substantial evidence supports the ALJ's finding that jobs exist in significant numbers in the national economy that Claimant can perform, and his step-five determination must be upheld.

26

### III.    The ALJ Properly Evaluated the Medical Opinion Evidence

Claimant next argues that the ALJ failed to properly evaluate the medical opinion evidence, including: (1) the VA disability rating; (2) failure to accord required deference to treating sources; (3) the opinions of Dr. Walker, Dr. Johnson, and nurse practitioner Sullivan; (4) the failure to develop the record or seek clarification from occupational therapist Jones; and (5) substituting lay judgment for medical expertise. (Docs. 8 at 13–18; 13 at 6–10). The Commissioner responds that the ALJ carefully evaluated the opinions under the framework outlined in 20 C.F.R. § 404.1527, explained the weight assigned to each source, and permissibly resolved conflicts in the medical evidence. (Doc. 12 at 13–18).

*A.    VA Disability Rating*

Claimant faults the ALJ for rejecting the VA's determination that he was "totally and permanently disabled" due to service-connected impairments. (Doc. 8 at 13–14). But the regulation, 20 C.F.R. § 404.1527(d), provides that a disability determination by another agency does not bind the SSA.[10] As discussed above, the ALJ acknowledged this evidence but explained that such findings are "irrelevant and not entitled to any weight," because under 20 C.F.R. § 404.1527(d), opinions that a claimant is "disabled" are administrative findings reserved to the Commissioner. (R. at 4799). The ALJ nevertheless considered the medical evidence underlying the VA's decision and incorporated those records into his analysis of Claimant's functional limitations. (R. at 4799); *see Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) (VA

---

[10] *See supra* note 5 and accompanying text.

disability ratings are not binding but may be considered for their evidentiary value). Accordingly, the ALJ acted within his discretion in rejecting the VA's ultimate disability finding while considering the underlying medical evidence.

B.    *Deference and Opinions of Drs. Walker and Johnson, and NP Sullivan*

Claimant more broadly asserts that the ALJ failed to accord proper deference to his treating providers. (Docs. 8 at 17–18; 13 at 9). For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 establishes the framework for weighing medical opinions. A treating source's opinion receives controlling weight only if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). When an opinion does not satisfy these criteria, the ALJ must weigh it using the regulatory factors, including length and frequency of treatment, supportability, consistency, and specialization. 20 C.F.R. §§ 404.1527(c)(2)–(6). Courts apply a "very deferential standard," requiring only that the ALJ minimally articulate his reasons for rejecting or crediting medical opinions. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *see also Schmidt*, 496 F.3d at 842 ("An ALJ . . . may discount a treating physician's medical opinion if . . . the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." (citation modified)). Importantly, opinions based largely on a claimant's subjective complaints may be discounted. *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013).

28

The ALJ adhered to these standards. As discussed in the background section, he reviewed the opinions of treating neurologist Dr. Johnson and NP Sullivan, acknowledged their status as treating providers, and cited their questionnaires and clinical notes. (R. at 4800–03). However, he explained that their conclusions largely echoed the Claimant's subjective allegations of migraine frequency and severity, rather than presenting objective findings. (R. at 4801–03). The ALJ emphasized that treatment records consistently showed Claimant was able to travel to appointments, engage in extended conversations, sit through examinations, and demonstrate adequate attention and memory—even during reported migraine episodes. (R. at 4779, 4802). These observations undermined the restrictive limitations assessed by Dr. Johnson and Sullivan. On this basis, the ALJ reasonably assigned their opinions "little weight." (R. at 4800–03, 4807).

Claimant further argues that the ALJ improperly discounted the report of examining psychologist Dr. Shianna Walker. (Doc. 8 at 14–15). Dr. Walker noted "moderate to marked" limitations but ultimately concluded that her evaluation was invalid due to symptom exaggeration. (R. at 4782, 4807–08). An ALJ may discount a medical opinion if it is internally inconsistent, *Clifford*, 227 F.3d at 871, as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," *id.* at 870. Here, the ALJ reasonably declined to credit Dr. Walker's report, explaining its internal inconsistency and lack of reliability. (R. at 4782). Claimant identifies no authority requiring the ALJ to give weight to an evaluation that the examiner herself

declared invalid. The ALJ's reasoning here is plainly supported by substantial evidence.

### C.    *Occupational Therapist Jones*

Claimant next argues that the ALJ erred by assigning "no weight" to occupational therapist Laurie Jones, who opined that Claimant was limited to lifting five pounds. (Doc. 8 at 18). The ALJ explained that Jones's opinion largely echoed Claimant's subjective complaints, lacked objective support, and conflicted with the opinion of orthopedic surgeon Dr. Thirkannad, who performed Claimant's two wrist surgeries and found greater functional capacity. (R. at 4797–98). The ALJ assigned "some weight" to Dr. Thirkannad as a treating specialist while supplementing his assessment with the testimony of ME Dr. Berger, who provided manipulative limitations consistent with the record. (R. at 4789, 4798). Claimant contends that the ALJ should have recontacted Jones for clarification. (Doc. 8 at 16–17). But an ALJ must recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1512(e). Here, the record included extensive treatment notes and multiple specialist evaluations, rendering recontact unnecessary. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (noting that an ALJ need not recontact a physician where the record is sufficient). The ALJ's decision to give no weight to Jones's opinion was therefore reasonable, and he acted within his discretion in deciding not to call a medical expert. *See* 20 C.F.R. § 404.1527(f)(2)(iii).

D.    *Substitution of Lay Judgment*

Finally, Claimant contends that the ALJ improperly substituted his own lay judgment for medical expertise. (Doc. 8 at 16–17). The record shows otherwise. The ALJ explicitly considered medical opinions from state-agency psychologists, Drs. Currey and Ross, ME Dr. Berger, treating neurologist Dr. Johnson, NP Sullivan, OT Jones, orthopedic surgeon Dr. Thirkannad, and examining psychologist Dr. Walker. (R. at 4789–4803, 4807–09). He weighed each in light of the regulatory factors, explained the reasons for crediting or rejecting them, and resolved conflicts in the record. That process reflects not lay judgment but precisely the adjudicative role assigned to ALJs. *See Richardson*, 402 U.S. at 399–401.

In sum, the ALJ gave a reasoned explanation for the weight assigned to each medical opinion. He correctly rejected the VA's disability rating as an administrative finding, discounted treating-source opinions that relied primarily on subjective reports and conflicted with objective findings, and declined to recontact Jones where the record was otherwise sufficient. The ALJ supported his determinations with citations to the record and properly weighed the factors set forth in 20 C.F.R. § 404.1527. Although Claimant urges the Court to reweigh the evidence, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). Here, substantial evidence supports the ALJ's evaluation of the medical opinion evidence, and Claimant's arguments are unavailing.

31

## IV.    Remand for an Award of Benefits Is Inappropriate

Finally, Claimant argues that this Court should not only reverse but also remand for an immediate award of benefits, relying on *Diaz v. Berryhill*, 388 F. Supp. 3d 382 (M.D. Pa. 2019). (Docs. 8 at 18–21; 13 at 10–11). Claimant maintains that *Diaz* articulated a two-part standard—focusing on excessive delay and a fully developed record—that he contends this Court should adopt.

This Court declines that invitation. As an initial matter, the Seventh Circuit has long made clear that remand for an award of benefits is appropriate only in the rare circumstance where "all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011); *see also Briscoe*, 425 F.3d at 356. That is not the case here.

Claimant invokes the history of repeated remands and the length of these proceedings, but those considerations do not alter the standard. As the Seventh Circuit has emphasized, "the fact that a claimant has been through multiple administrative proceedings does not change the rule that benefits may be awarded only if the record supports but one conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020). While the Court recognizes the frustration attendant to protracted litigation, "repeated remands are not grounds for an award of benefits." *Id.*; *see also Lindner v. Sullivan*, 902 F.2d 1263, 1267 (7th Cir. 1990) ("We recognize the merit of bringing this interminable litigation to an end as soon as resolution of the major issues will permit."). But the record does not compel an award of benefits.

Here, far from presenting a record that compels a single outcome, the case turns on disputed issues of vocational evidence, medical opinion weight, and functional limitations—all matters that fall squarely within the agency's fact-finding role. *See Richardson*, 402 U.S. at 399–401. Even if the Court were to find reversible error, the appropriate remedy would be a remand for further proceedings to allow the Commissioner to address those issues in the first instance.

### CONCLUSION

For the reasons set forth above, it is recommended that the Commissioner's decision denying Claimant's application for disability insurance benefits be affirmed. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).


SO RECOMMENDED.

Entered this 15th day of September 2025.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge
